```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
                            HOUSTON DIVISION

UNITED STATES OF AMERICA,       §
                                §
              Plaintiff,        §
                                §
VS.                             §   CIVIL ACTION NO. H-13-1150
                                §
SEALIFT, INC., in personam, and §
M/V ABBY G, its engines, tackle,§
etc., in rem; and               §
M/V ADVANTAGE, its engines,     §
tackle, etc., in rem; and       §
M/V CLEVELAND, its engines,     §
tackle, etc., in rem; and       §
M/V HARRIETTE, its engines,     §
tackle, etc., in rem; and       §
M/V MARILYN, its engines,       §
tackle, etc., in rem; and       §
M/V NOBLE STAR, its engines,    §
tackle, etc., in rem; and       §
M/V TSGT JOHN A CHAPMAN, its    §
engines, tackle, etc., in rem;  §
and                             §
M/V WILSON, its engines, tackle,§
etc., in rem,                   §
                                §
              Defendants.       §
```

## OPINION AND ORDER

Pending before the Court in the above referenced cause, grounded in the Carriage of Goods By Sea Act ("COGSA"), 46 U.S.C. § 30701, et seq., and alleging loss and damage to cargo transported under contracts of carriage from 2007-2011 on multiple voyages aboard M/V Abby G, M/V Advantage, M/V Cleveland, M/V Harriette, M/V Marilyn, M/V Noble Star, M/V TSGT John A Chapman, and M/V Wilson (collectively, "Vessels"), all owned, operated, chartered, managed, and otherwise controlled by Defendant Sealift, Inc. ("Sealift"), is

-1-

Sealift's motion to dismiss for failure to state a claim (instrument #5) under Federal Rule of Civil Procedure 6(b).

The United States seeks $3,269,070.08 in damages, plus interests and costs, arrest of the eight vessels, and a judgment of condemnation and sale entered against the arrested property, with the claim to be paid from the proceeds of the sale.  Attached to United States's Complaint (#1) is Schedule A, listing the cargoes in surveys and tabulating the damages.

## Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. Randall D. Wolcott, MD, PA v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011), citing Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp. v. Twombly, 127

S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965, citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "Twombly jettisoned the minimum notice pleading requirement of Conley v. Gibson, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to

allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  Montoya, 614 F.3d at 148, quoting Twombly, 550 U.S. at 555, 570.

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010), citing Collins, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).

### Sealift's Motion to Dismiss (#5)

Sealift argues that the complaint "provides a woefully incomplete notice of the factual basis for the United States' claims" an fails to plead a plausible claim .  #1 at p.1.  Claiming that each of the food aid cargoes transported by Sealift for USAID[1] over a four-year period is unique and subject to a distinct and separate USAid Booking Note.  The loading/delivery and discharge terms vary with the nature of the shipment and establish when the ocean carrier's responsibility starts and ends for the shipment and

---

[1] USAID stands for the United States Agency for International Development, which administers the Food for Peace Program.  7 U.S.C. § 1721.

-4-

subsequently the carrier's liability or lack thereof.[2]  While Schedule A attached to the Complaint identifies the port of loading for each shipment, it does not specify the ports of discharge, identify Defendants' agents who accepted the shipments and agreed to transport them, identify the stevedores involved in the loading process, indicate the cause and nature of the damage, assert whether the goods were damaged before they reached a point of rest in the designated transit terminal before loading onto the Vessels, nor describe circumstances surrounding discharge of the cargo. Sealift complains that some of the cargo damage is described as "marine losses" and distinguished from "U.S. Port losses."  It argues that an ocean carrier's responsibility for alleged cargo damage noted at the time of discharge depends on whether the cargo

---

[2] For example, a common "Load/Delivery in a standard USAID Booking Note is "FAS VESSEL NAMED PORT OF LOADING (POL)."  "Free alongside ship," or FAS, values "include all costs of transportation and delivery of goods to the dock."  22 C.F.R. § 211.2(k).  To trigger a carrier's responsibility for a FAS shipment, the cargo must be "delivered to the Carrier at the first point of rest within a USDA approved transport terminal within the commercial limits of the named port of loading."  #5, Ex. A at ¶1(a).  In contrast, for another common category, "Pre-Positioned Cargo--Port of Landing, the USAID POL cargo loading terms provide,

> The Carrier (or its agents or stevedores) shall sign nonnegotiable dock receipts, indicating acceptance of the cargoes in good order.  Upon this acceptance, cargo is deemed to be in a delivered position and becomes the full responsibility of the contracted Carrier.  The cargoes moving directly from rail cars or trucks to the performing vessel or containers are considered to be FAS cargoes.

was "containerized or breakbulk," not distinguished in the complaint.  Moreover Clause 2 of the standard USAID booking note governs "Discharge/Delivery Terms" and distinguishes such terms as delivery at "a place of rest at discharge port," "[d]elivered to port warehouse or CFS," and "warehouse delivery."

Nor, maintains Sealift, does the complaint allege that all conditions precedent necessary to state a cognizable claim, e.g., the list of documents that must be provided by USAID to an ocean carrier to support a cargo damage claim set out in 22 C.F.R. § 211.9 (including notice to the ocean carrier; survey reports, outrun reports, discharge reports, and tally reports; information about the cause of the loss; and documentation about the amount of the damage).

Finally Sealift objects that Schedule A, Ex. A to the Complaint, fails to specifically identify evidence of Defendants' receipt of the cargo in good order and condition and the damage surveys essential for a *prima facie* case of cargo damage.  It notes, for example, that although bill of lading numbers are provided, a significant part of the United States' claim purportedy occurred prior to the loading of the cargo or the issuance of the bill of lading.

### United States' Opposition (#6)

Insisting that its Complaint satisfies the requirements of Rule 8(a) while Schedule A satisfies Federal Rule of Evidence 1006

as a summary to prove the content of business records of shipments that the United States will introduce at trial. Sealift's conclusory allegation that Schedule A is "cumbersome and confusing" does not make it so and does not warrant disregarding it. The government goes on to explain how to read Schedule A to find specific factual information about a cargo shipment and satisfies Rule 8's notice pleading standard. It also explains how Schedule A summarizes the documents, including identifying specific ocean bills of lading for each claim, the specific losses recorded in Vessel Loading Observation tallies in each load port, and specific losses surveyed at each discharge to state a prima facie case for presumption of liability against Sealift under COGSA. Schedule A also provides specific references to documents issued by Sealift that will enable Sealift to identify key loading terms for each shipment and distinguish between breakbulk and containerized shipments.

The United States also argues that contrary to Sealift's representation, there is no regulatory condition precedent to the government's commencing an action against Sealift. Sealift misconstrues 22 C.F.R. § 211.9, which applies to the Commodity Credit Corporation and "non governmental cooperating sponsors," i.e., private charitable organizations that receive the food aid donated by the United States for distribution to needy regions of the world. The nongovernmental cooperating sponsor is the shipper.

The regulation does not give a detailed list of documents that USAID must provide to an ocean carrier to support a cargo damage claim, nor does it present any conditions precedent to commencing suit against the ocean carrier for lost or damaged cargos. Moreover, if the cooperating sponsor fails to comply with the regulation, the United States's right to sue the ocean carrier is not prejudiced.  The United States asserts that to the extent that it, as the assignee of the original shipper's claim, becomes the nominal shipper for purposes of this lawsuit, it provides references to all of the documents necessary to identify the grounds of the shipper's claim.

### Sealift's Reply (#7)

Sealift insists that to determine the United States' breach of contract allegations for numerous shipments under different contracts through the references in Exhibit A would take Sealift several years' worth of review of extrinsic documents.  Moreover the Complaint fails to provide any details of any alleged breaches of any contract.  In addition Sealift complains of the lack of information in documents attached to the United States' responses.

After considering the dispute, the Court finds that dismissal is not appropriate. Nevertheless, the United States intentionally decided to sue Sealift for damage on multiple voyages by eight different vessels over a four-year-long period.  The Court agrees with Sealift that the complaint and its exhibit provide sparse

information.  It finds that Sealift should not be unfairly burdened by having to engage in overly burdensome discovery at this notice stage of the litigation simply to find out the basic grounds for the government's claims of cargo damage from the numerous shipments.  Accordingly the Court

ORDERS that Sealift's motion to dismiss is DENIED, but that the United States shall file within thirty days a more detailed amended complaint providing at least a summary of the basic facts and nature of the alleged breaches of contract, individually or by grouping if appropriate, on which it brings suit.

**SIGNED** at Houston, Texas, this  30th  day of  January , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE