Case 4:13-cv-01150   Document 61   Filed in TXSD on 01/31/17   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
January 31, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-01150 |
| § | |
| SEALIFT, INC., *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Pending in the above-referenced cause is Defendant Sealift, Inc.'s ("Sealift") Motion for Reconsideration. Doc. 55. After thoroughly considering the Motion, Plaintiff United States of America's ("Government" or "United States") Response in Opposition, Doc. 56, this Court's previous Opinion and Order, Doc. 53, and the relevant law, the Court concludes that Sealift's Motion should be denied.

**I.   Background**

This case arises from the Government's attempt to recover for alleged loss and damage to food-aid cargoes that Sealift shipped to a number of developing countries between 2007 and 2011 on the Government's behalf. Doc. 1. Invoking the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. §§ 1300–1315 (2012), and the Harter Act, 46 U.S.C. app. §§ 190–196 (2012), the Government seeks to collect millions of dollars in damages from Defendant, arrest Defendant's vessels, and obtain a judgment of condemnation and sale against the arrested vessels. *Id.*

On April 9, 2015, Sealift filed its Motion for Partial Summary Judgment, arguing that the record conclusively demonstrated that it had no control in the choice of berth, choice of stevedore, imposition of security measures, or discharge operations at the destination ports

involved in the maritime claims at issue. Doc. 22. According to Sealift, delivery occurred when the ships' hatches opened and it cannot be liable for losses that took place after that point because it no longer had control of the cargoes. *Id.* The Government opposed the Motion by producing excerpts of survey reports indicating damage to the cargoes. Docs. 24-4, 24-5. After reviewing the record and relevant law in depth, this Court concluded that fact issues exist that preclude summary judgment. Doc. 22. Accordingly, on August 10, 2016, this Court denied Sealift's Motion. *Id.*

Sealift now moves the Court to reconsider its previous Opinion and Order. Doc. 55. In its Motion for Reconsideration, Sealift also objects to the admissibility of the Government's survey reports. *Id.* The Motion is now ripe for adjudication.

## II. Legal Standard

A motion for reconsideration "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydro Chem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, it merely serves to allow "a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 735 F.2d 1367 (7th Cir. 1984)). A motion for reconsideration may also be used to bring an intervening change in the controlling law to the court's attention. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)). Nevertheless, "[r]econsideration of a judgment after its entry is an extraordinary remedy that

should be used sparingly." *Templet*, 367 F. 3d at 479 (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

### III. Sealift's Motion for Reconsideration

#### a. Objections to Government Survey Reports

In its Motion, Sealift objects for the first time to the admissibility of the Government's survey reports. Doc. 55 at 11–12. Sealift contends that the public-records exception to the hearsay rule does not apply because (1) the survey records are not "a record or statement of a public office" that set out "the office's activities"; (2) the matters recorded were not "observed while under a legal duty to report"; (3) the records do not record "factual findings from a legally authorized investigation"; and (4) the records are untrustworthy. *Id.* at 11. Sealift goes on to argue that the Fifth Circuit's *Central Gulf Lines I* opinion, *U.S. v. Central Gulf Lines*, 747 F.2d 315 (5th Cir. 1984), on which this Court's prior decision on admissibility was based, relies on the faulty assumption that a private cooperating sponsor (also known as a private voluntary organization or "PVO") in the Food for Peace Program is a public official or organization. *Id.* at 12. Because PVOs are inherently private, Sealift urges that the Fifth Circuit erroneously applied Rule 803(8) to admit the survey reports. *Id.* In order to "get around the inconvenient fact" that the PVO is not a public office for purposes of 803(8), Sealift asserts that the Fifth Circuit "jump[ed] to the conclusion that the CLUSA—a PVO—is a public official or organization." *Id.* To further press its point that not all PVOs are public entities under the Food Aid Program for the purpose of Rule 803(8), Sealift cites deposition testimony in which the branch chief for the Marine Liability Branch for the Kansas City Commodity Office of the USDA testified that the USDA doesn't have any role in vetting discharge survey companies that may be selected by a PVO. *Id.*

After further review of the controlling law, the Court concludes that Sealift's arguments are based on a gross misreading of *Central Gulf Lines I*. Contrary to Sealift's contention, the Fifth Circuit performed no sleight of hand to "get around" any "inconvenient fact." As the *Central Gulf Lines I* Court noted, the plain language of 803(8) encompasses discharge surveys because whether or not the surveys were ordered and prepared by private companies, they are nonetheless "record[s] or statement[s] of a public office . . . [that] set[] out . . . matter[s] observed while under a legal duty to report." Fed. R. Evid. 803(8). As 22 C.F.R. § 211.9(c)(1) makes abundantly clear—PVOs are required to arrange for independent cargo surveys at discharge and return these reports to the Commodity Credit Corporation—a government agency. As such, there is (1) a legal duty to report and (2) these records are records of a public office. The fact that the entities that make the arrangements for the surveys to be conducted and those that conduct the surveys are private is irrelevant. *See Central Gulf Lines I*, 747 F.2d at 319 ("Rule 803(8) does not require a public official to make the record."). Ultimately, the "order" to conduct discharge surveys comes from a public office, the surveys are conducted under a legal duty to document the cargo at discharge, and the surveys are based on matters the surveyor personally observes. This is all that is necessary to satisfy the first two elements of Rule 803(8). *See id.* at 319 (Stating that to satisfy the first two elements of Rule 803(8), "the record sought to be admitted must be made [1] from matters within the personal knowledge of the public official making the record or his agent or someone with a duty to report the matter to a public official"; and "[2] pursuant to a duty imposed by law.").

With regard to the final element of admissibility under Rule 803(8), trustworthiness, Sealift argues that the Court's conclusion that a number of survey reports were vague or unclear indicates a general lack of trustworthiness, which makes the survey reports inadmissible. Doc. 55

at 7–8. The Court disagrees. In its prior Opinion and Order, the Court only concluded that the reports were vague insofar as they did not conclusively establish when or how damage occurred to cargo—which meant that there were questions of fact that precluded summary judgment on those claims. Moreover, the survey reports that the Court determined were incapable of conclusively establishing the time of loss only apply to a small number of the claims at issue in this case. This losing argument aside, the Court finds that there is no indication that the survey reports are untrustworthy. Accordingly, the Court finds that the third element for admission is also met. *See id.* ("Central Gulf has not provided any evidence or reason to believe that the documents are not trustworthy. To the contrary, the documents are originals and Boda had nothing to gain, and its reputation as a surveyor to lose, by falsifying the documents."). Sealift's objections to the survey reports are overruled.

### b. Alleged Errors in the Court's Prior Opinion

Sealift contends that the Court should reconsider its prior ruling because 17 of the Government's claims "were not addressed at all in the Court's Opinion & Order." Doc. 55 at 3. Sealift then cites a number of reports from particular voyages that indicate no damage was apparent at the opening of the hatches and reiterates its position that it cannot be liable for actions taken after the ships hatches were opened and it no longer had control of the cargo. *Id.* From there, it argues that summary judgment should have been granted in its favor on those claims. *Id.*

Sealift misses the mark with this argument. The Court need not have laboriously addressed each individual voyage one by one. The Court was free to conclude—as it did—that each of the voyages fit into one, or more, of a number of categories: those for which (1) the surveys left unanswered questions about when and how the damage occurred; (2) the record

raised questions about the extent of control that Sealift maintained over discharge operations; (3) the surveys appeared to indicate Sealift was, in fact, the liable party; (4) the record demonstrated multiple party liability; and (5) the record contained conflicting evidence. Doc. 53 at 10–14. Importantly, the Court concluded that whatever category each voyage fits into, fact questions remained precluding summary judgment. *Id.*

With regard to the voyages for which the Court concluded that the survey records are unclear as to when or how the alleged losses occurred, Sealift argues that "[t]he fact that Plaintiff's discharge survey is 'vague' as to when it was taken and 'unclear' as to what actions were attributable to the stevedore only demonstrates that Plaintiff has failed to establish a prima facie case of cargo loss because Plaintiff cannot establish short or damaged delivery." Doc. 55 at 7.

Sealift misreads the Court's Opinion. The Court did not conclude that Plaintiff did not establish a prima facie case. To the contrary, the Court concluded that Plaintiff *had* established a prima facie case for the shipments. Doc. 53 at 11–12. Nevertheless, the Court concluded that fact questions remained as to when and how that damage occurred and the answers to those questions would determine whether, and to what extent, Sealift was liable for the losses. *Id.*

Finally, in response to the Court's conclusion that—based on a letter of protest contained in the discharge survey—fact questions remained as to the extent of Sealift's control over stevedores on the 2010 voyage to Freetown, Sierra Leone (DCN20265), Sealift protests that "[t]he musings of this cargo surveyor cannot create a genuine issue of material fact because the cargo receiver surveyors . . . are not in position themselves to influence the state controlled port authority and monopolized stevedoring operations in the Port of Freetown." Doc. 55 at 8. (citing Doc. 22-1 at 19).

Again, the Court disagrees with Sealift. The surveyor's power to influence the port authority is irrelevant. It is not the Court's duty to weigh the evidence or make credibility determinations at the summary-judgment stage. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Rather, the Court simply reviews the record with an eye toward determining whether there is a genuine issue of material fact for trial. *Id.* "An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (citation and internal quotation marks omitted). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a dispute as to a material fact is genuine. *Id.* (citation omitted). As already explained in detail in the Court's prior Opinion, Sealift's liability rises and falls on the resolution of the unanswered issues identified by the Court. Accordingly, upon review, the Court is not swayed that its prior ruling was erroneous, and, therefore, denies Sealift's Motion.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Sealift's objections to the admissibility of the government's survey reports are **OVERRULED**. It is further

**ORDERED** that Sealift's Motion for Reconsideration, Doc. 55, is **DENIED**.

SIGNED at Houston, Texas, this 31st day of January, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE